## Commonwealth v. McChesney

*Oscar S. Bortner*, for Commonwealth.

*David H. Moskowitz*, for defendant.

SATTERTHWAITE, P. J. (SPECIALLY PRESIDING), November 4, 1966.—These are consolidated appeals allowed by the court from judgments of summary con-

viction by a justice of the peace against defendant for alleged violations of section 699.15 of The Penal Code of June 24, 1939, P. L. 872, as added by the Act of September 27, 1961, P. L. 1695, 18 PS §4699.15. Each of the nine criminal complaints charged defendant with a separate summary offense of engaging in the business of selling or otherwise dealing on Sunday in fresh meats, produce or groceries on two particular dates in violation of said statute. Defendant has challenged the constitutional validity of the statutory interdiction in question, as well as its application to him under his particular situation and the surrounding circumstances.

The relevant facts are not in dispute, and the several sales transactions which provided the immediate foundations for the alleged violations have been stipulated. Defendant is the local manager of the Shop-Rite Market, located in Warminster Township, this county, one of a chain of supermarkets owned by Shop-Rite Foodarama, Inc., whose headquarters are in Freehold, N. J. This market was open and doing business on Sunday, May 1, 1966, and on Sunday, May 8, 1966, with approximately 45 employes on duty on each occasion. Defendant, who was personally present and in charge at the store premises on both of these dates, opened the market on Sundays at the direction of his superiors in the Shop-Rite Foodarama higher management. Defendant had no part in determining that matter of store policy, and he in no way personally benefitted by the fact of the market's Sunday opening, being paid a flat salary regardless of the hours or timing of his employment and having no beneficial interest as a stockholder of Shop-Rite Foodarama, Inc., or otherwise than as such an employe thereof.

On May 1, 1966, a Sunday, an employe of the market sold at retail to one of the prosecuting witnesses a jar of coffee. On the following Sunday, May 8, eight

other prosecuting witnesses made other purchases at the Shop-Rite Market of such items as milk, cereal, canned fruit juice, cookies, fruit, steak sauce, canned vegetables, nuts and paper towels. Each of these parties filed a criminal information against defendant by reason of the respective transactions, and after hearings defendant was found guilty by the justice of the peace, and an appropriate sentence of fine and costs was entered in each case. The within appeals followed.

Section 699.15 of The Penal Code, the provisions of which were allegedly violated by defendant in these cases, provides in relevant part as follows:

"Whoever engages in the business of selling or otherwise dealing at retail in fresh meats, produce and groceries on Sunday shall, upon conviction thereof in a summary proceeding for the first offense, be sentenced to pay a fine of not exceeding one hundred dollars ($100). . . .

"Each separate sale, or offer to sell, shall constitute a separate offense. . . .

"This section shall not apply to any retail establishment employing less than ten persons or to any retail establishment where fresh meats, produce and groceries are offered or sold by the proprietor or members of his immediate family or employing less than ten persons nor shall it apply to any retail establishment where food is prepared on the premises for human consumption".

Defendant's positions in these appeals fundamentally are three-fold in character. First, he contends that section 699.15 is unconstitutionally discriminatory against the larger food retailers by reason of its application only to sellers of fresh meats, produce and groceries and its exception of small stores employing less than 10 persons, in alleged violation of the equal protection clause of the Fourteenth Amendment

to the United States Constitution and the prohibition of art. III, sec. 7 of the Pennsylvania Constitution against local or special laws, inter alia, regulating labor or trade. Second, he further argues for the constitutional invalidity of this statute on the ground that it is so vague, indefinite and ambiguous that it is a penal law without ascertainable standards of application and, hence, is violative of Federal due process. Finally, he contends that, as a matter of fact and statutory construction, the instant transactions were within the exception stated in the last clause of the statute because the Warminster Shop-Rite supermarket was a retail establishment where food was prepared on the premises for human consumption.

In the view we take of the case, it is unnecessary to pass upon the constitutional questions sought to be litigated. Whether or not the statute may be valid as against these contentions, defendant has not in any event been proven guilty of violation thereof under its express terms. The Shop-Rite establishment, for the transactions of which he is sought to be charged with criminal responsibility herein (and we do not pass upon the further problem of whether, as a mere non-policy-making employe, he personally was "engaged in the business of selling or otherwise dealing at retail"), was simply and quite apparently within the excepted category of those "where food is prepared on the premises for human consumption".

The uncontradicted evidence on these appeals indicates that the Shop-Rite Market unquestionably does "prepare", on its Warminster premises, on Sundays as well as on weekdays, several types of items of food for human consumption. This is not to say that the market conducts a restaurant type of operation, contemplating the actual consumption of food on its premises. The statutory exemption does not so require. Excluded are establishments within which food

is *prepared*, a criterion which does not necessarily mean prepared *and consumed* thereon. The sequence of legislative phraseology, with the qualifying words "on the premises" immediately following the word "prepared", by way of sharp contrast to the markedly different phrasing of "prepared for human consumption on the premises" (which might have been used and which would have been ambiguous), is significant and unequivocal on this point. Even the Assistant District Attorney concedes herein that it is not necessary, in order to be within the exception under discussion, that the food prepared within the subject establishment be customarily consumed therein.

He does contend, however, that the exclusion was not intended to embrace supermarkets of the type here under consideration for two reasons: first, that if defendant be correct in his definition and application of the word "prepared", the resulting exclusion would "gobble up" the statute, with the exemption from prohibition being practically coextensive with and effectively cancelling out the prohibition itself; and, secondly, that the legislature really intended only to exclude establishments preparing food for *immediate*, rather than *ultimate*, human consumption.

The first of these positions we do not believe to be warranted. The Merriam-Webster New International Dictionary (2d ed.), defines the word "prepare" as follows:

"To fit, adapt, or *qualify beforehand for a particular purpose*, end, or condition; to make ready; *to put into a state for use* or application; . . . to provide; to equip; to fit out; hence, to make or form, esp. by some specified process; to compound; as to *prepare* an entertainment, a medicine, food". (Italics supplied.)

This concept of "preparation", accordingly, would seem to connote the substantially full and completely accomplished process of making ready for the ulti-

mate objective, as contrasted with the bare initiation of merely preliminary, incomplete or tentative steps in that direction. Thus, to prepare food for human consumption would be so to treat, process and transform the raw or partially treated or processed materials or ingredients into substantially the final and completed form or condition in which they would normally and customarily be eaten; it would not usually be regarded as including such remote and inconclusive activities as, for example, the cultivation and harvesting of grain, the cleaning and peeling of vegetables, or the slaughtering and butchering of beef cattle, even though, of course, these all may be intermediate steps in the over-all purpose of food preparation.

In the instant case, we find no merit to defendant's position that the various merchandising activities of practically all of its departments in themselves constitute preparation of food in the sense under consideration. The sorting, cleaning, cutting, weighing, wrapping, displaying and refrigeration or other protective presale functions of Shop-Rite Market's meat, produce, grocery and dairy departments do not, in our opinion, constitute "preparation for human consumption" of the food items held for sale therein. Were it not for the baking, cooking or certain other processes carried on elsewhere within the premises, as next hereinafter mentioned, none of these incomplete treatments or handlings would be the accomplished "preparation" contemplated by the statutory context. The prohibition of the statute may, therefore, have practical application (in other cases), notwithstanding the broad exclusion under consideration.

We do agree, however, with defendant's much more realistic contention that there are activities of the bakery department and of the so-called appetizer or delicatessen department which do constitute the Warminster Shop-Rite Market as an excepted retail food

establishment. On these premises, in the former department, all manner of baked goods, including bread, cakes, pies, cookies, Danish pastries and the like, are shaped, formed, filled, baked, iced or glazed and otherwise finished from frozen dough and other ingredients brought in from elsewhere. Similarly, in the latter area, various types of salads (fruit, seafood, ham, cucumber, and noodle, for example) are made up, ready for serving, from materials brought there from other departments within the supermarket; roast beef and baked ham are roasted in ovens there furnished and, on occasion, pastrami is cooked and corned beef is pickled; chickens and spare ribs are there barbecued regularly. Adjacent to the delicatessen department are two automatic sandwich-vending machines, the supply of sandwiches for which is replenished by store personnel as occasion requires from ingredients assembled and prepared out of stock within the store premises.

These functions of the baking and appetizer departments bring the Warminster Shop-Rite Market within the food - preparation - establishment exclusion of the statute; food is therein "prepared" in full, final and completely accomplished fashion and condition. Nothing further remains to be done thereto in the nature of a preparative process before usual and customary human consumption. Whether the respective products so prepared within the premises be regarded as ready for *ultimate* (rather than *immediate*) use as food, as the Assistant District Attorney contends, would seem to be a matter of no moment, even if the argued difference can be appreciated in any event, for the simple reason that the statute makes no such distinction or comparison.

Finally, it should further be noted that the statutory exception relates to the "retail establishment" wherein food is prepared, without limit or qualifica-

tion (in this case, therefore, it would embrace the Shop-Rite Market as a whole), so that if the "establishment" qualifies for exclusion, the prohibition of *this* statute (we are not here concerned with others, such as section 699.10 of The Penal Code, as added by the Act of August 10, 1959, P. L. 660, 18 PS §4699.10) has no application whatsoever. Accordingly, because of the manner in which the legislature has chosen to phrase this type of Sunday sales restriction or regulation, a qualifying establishment may, nevertheless, sell fresh meat, produce and groceries on that day; generally, it is not confined merely to those items of food prepared on the premises for human consumption.

### Final Order

And now, November 4, 1966, for the reasons stated in the foregoing opinion, the within appeals are hereby sustained, the judgments of conviction are hereby reversed and defendant is hereby found not guilty of the respective criminal complaints against him as within mentioned. Costs to be paid by the County of Bucks.